# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA BRUNSON, *Individually and as Administratrix of the ESTATE OF DOROTHEA C. BRUNSON, deceased*, <br> **Plaintiff,** <br> v. <br> **THE UNITED STATES OF AMERICA c/o US DEPT. OF HEALTH & HUMAN SERVICES,** <br> **Defendant.** | CIVIL ACTION <br><br> NO. 09-3341 |

## MEMORANDUM OPINION

**Tucker, J.**                                                                                             **November \_\_\_\_, 2009**

Presently before this Court is Defendant's Motion for Judgment on the Pleadings (Doc. 6) and Plaintiff's Response thereto (Doc. 8). For the reasons stated below, the Court will deny Defendant's Motion.

## FACTUAL BACKGROUND

Plaintiff Patricia Brunson ("Plaintiff") is the daughter of, and administratrix of the estate of, Dorothea C. Brunson ("Brunson"). On March 11, 2007, Brunson died from cervical cancer at the age of fifty-three (53).

Defendant Department of Health and Human Services is responsible for and provides funding to the Greater Philadelphia Health Action, Inc. ("GPHA"), a health care facility organized and existing under the laws of the Commonwealth of Pennsylvania. Plaintiff alleges that throughout the relevant time period, Defendant acted through its physicians and agents, including Family Practice Physicians Seema Patel, M.D. ("Patel") and Kathleen Christophe, M.D. ("Christophe").

On or about August 2, 2003, Brunson became a patient for pay with GPHA, and was examined

by Patel. Patel recorded difficulty performing a Pap smear, and ordered blood tests, which demonstrated anemia as of August 29, 2003. Compl. ¶¶ 13-14. The Pap smear results returned on September 8, 2003 demonstrated epithelial cell abnormalities and the presence of a-typical squamous cells of undetermined significance. According to Plaintiff, Patel did not order additional testing to determine the significance of the a-typical cells or to complete a differential diagnosis, despite Brunson's continued complaints of bleeding and persistent anemia. Compl. ¶¶ 15-16.

On or about September 29, 2004, Brunson was examined by Christophe, who also performed a Pap smear and ordered blood tests, both of which demonstrated the same results as those obtained from tests performed the previous year. Plaintiff alleges that despite the continuous symptoms, Christophe did not perform a cervical biopsy, or order additional testing to determine the significance of the a-typical cells or complete a differential diagnosis.

On or about December 21, 2004, Plaintiff avers that an ultrasonography of Brunson's pelvis revealed multiple rounded, well-circumscribed heterogeneous masses in the myometrium, at least one of which was partially calcified. Compl. ¶ 21. Plaintiff contends that among the radiologist's impressions was the observation that "this could represent endometrial carcinoma. MRI of the pelvis with gadolinium is recommended for further evaluation. Alternatively, biopsy could be performed if clinically indicated." Plaintiff alleges that the radiologist's report was received by GPHA as of January 3, 2005, yet none of the suggested measures were followed by Defendant's agents. Compl. ¶¶ 22-25. Instead, according to Plaintiff, Brunson was unsuccessfully treated with Lupron, while unbeknownst to her, the cancer continued to grow and metastasize.

On May 16, 2005, Plaintiff states that Brunson was admitted to Temple University Hospital for heavy vaginal bleeding and chronic anemia. Then on May 18, 2005, Brunson underwent an endoscopy, including endometrial currettings and a cervical biopsy, which revealed squamous cell carcinoma that was both moderately differentiated and invasive. Compl. ¶ 28. Plaintiff further states that as of July 1,

2005, Brunson's cancer was staged as "at least IIB." Compl. ¶ 29.

Plaintiff alleges that Brunson underwent aggressive radiation and concomitant chemotherapy in an effort to cure her cancer which proved unsuccessful. Brunson was transferred to the Stapeley Nursing Home for palliative care on March 3, 2007, where her condition remained terminal until her passing on March 11, 2007.

On January 15, 2009, Plaintiff filed an administrative claim with the appropriate federal agency. After exhausting her administrative remedies as required under the applicable federal statute, Plaintiff initiated an action in the Eastern District of Pennsylvania for negligence and corporate liability, vicarious liability, wrongful death, and survival, and seek damages in an amount in excess of one hundred fifty thousand dollars ($150,000).

Defendant filed a Motion for Judgment on the Pleadings on October 2, 2009.

## **LEGAL STANDARD**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12© is subject to the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d. Cir. 2005). A Rule 12(b)(6) motion should be granted only if it appears to a certainty that no relief could be granted under any set of facts that could be proved. Id.

Thus, the allegations in the complaint must transcend the speculative, and instead, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to

support the claims." *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003).

## DISCUSSION

Defendant brings this Motion for Judgment on the Pleadings with respect to all of Plaintiff's claims, specifically negligence and corporate liability, vicarious liability, wrongful death, and survival. Essentially, Defendant alleges that the statute of limitations has expired for all of the claims, and that Plaintiff's action is therefore barred. However, "determining when the statute of limitations begins to run in a case is sometimes difficult, especially in cases claiming medical malpractice." *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266 (quoting *Hughes v. United States*, 263 F.3d 272, 273 (3d Cir. 2001). This matter presents such an instance, not merely because of the alleged malpractice, but Defendant argues that the survival action is barred, and that all of Plaintiff's remaining claims are derivative of the survival action. As a result, Defendant asserts that of Plaintiff's remaining claims are barred as well.

The Court will first address the applicable statute of limitations which is determined under the Federal Tort Claims Act, and a discussion of Plaintiff's remaining claims and the applicable dates for calculating the statute of limitations will follow.

**A.      The Federal Tort Claims Act**

The Federal Tort Claims Act ("FTCA") serves as a limited waiver of the United States' sovereign immunity. The Act provides that a claim against the United States is barred unless it is presented to the appropriate federal agency "within two years after such claim accrues." 28 U. S. C. § 2401(b). Also relevant to the discussion is the "discovery rule." Generally a tort claim accrues at the time of the injury, however, in *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979), the Supreme Court carved out an exception for FTCA claims involving medical malpractice, which states that such claims accrue not at the time of injury, but rather when a plaintiff knows of both the existence and the

cause of his injury. Therefore, the determination of when a claim accrues for purposes of the FTCA is a question of federal law. *Tyminski v. United States*, 481 F.2d 257, 262-3 (3d Cir. 1973).

The FTCA further states that "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Section 1346(b) of the FTCA also provides that the United States is liable to the same extent as a private person in accordance with the law of the place where the act or omission occurred. Consequently, in the present case, Pennsylvania law applies.

**B.** **Wrongful Death Actions vs. Survival Actions**

Defendant argues that all of Plaintiff's claims are derivative of the survival action brought on Brunson's behalf, and a result, focuses its argument on the statute of limitations applicable to survival actions. However, Pennsylvania law indicates when evaluating survival actions and wrongful death actions, as in this case, a separate analysis is necessary.

Under Pennsylvania law, a wrongful death action is distinct from a survival action. *See* 42 PA. CONS. STAT. § 8301. In other words, Pennsylvania creates an independent cause of action such that the wrongful death action exists for the benefit of and is held by statutorily specified survivors, and is intended to compensate those individuals for their pecuniary loss, loss of companionship, etc. *Philadelphia Geriatric Center*, 463 F.3d at 271. In contrast, a survival action is a continuation of the personal injury action held by the decedent at the time of his or her death, and may be brought by the personal representative of the decedent's estate. *Id.* at 272 (citing *Moyer v. Rubright*, 438 Pa. Super. 154 (1994)).

**1.** **Derivation from Original Tort**

There is some precedent supporting Defendant's position that Plaintiff's wrongful death action and her additional claims are derivative of the survival action. In *Moyer v. Rubright*, the court found

5

that while not derivative of the decedent's personal injury action, wrongful death actions have been deemed derivative of the original tort which resulted in the injury and eventual death. 438 Pa. Super. 154 (1994). However, the *Moyer* court also stated that if at the time of the decedent's death the underlying tort action was not time-barred as to the decedent, then the wrongful death action is not barred as to decedent's relatives.

In the present case, relying on *Moyer*, Defendant asserts that Plaintiff's wrongful death action and claims for corporate and vicarious liability are barred because these claims are derivative of the survival action which they argue has been barred since December 2006. However, Defendant's analysis is flawed for several reasons.

First, upon examining whether at the time of Brunson's death she still had a viable tort, it is clear that just as the plaintiff in *Moyer*, she did. The *Moyer* court concluded that the plaintiff's malpractice action was not time-barred on the date of her death because calculating two years from the date of her diagnosis, the two year period had not elapsed on the date of her death. Here, by Defendant's own admission, as of December 2004, it was not determined whether Brunson had cancer. *See* Def. Answer ¶ 26. The complaint in this matter indicates that the first unequivocal determination that Brunson had cancer did not occur until May 18, 2005 when Brunson was admitted to Temple University Hospital, where a cervical biopsy revealed squamous cell carcinoma. This was arguably the first time than Brunson knew of both the existence and the cause of her injury. Brunson died on March 11, 2007, less than two years from the first determination that she was suffering from cancer, which means that on the date of her death, she still had a viable tort claim. Therefore, following Defendant's logic, since Brunson's malpractice action was still viable on the date of her death, Plaintiff's claims for wrongful death, corporate liability, and vicarious liability remain viable as well.

Second, the United States Court of Appeals for theThird Circuit has joined sister circuits that have concluded that, for purposes of the FTCA, wrongful death claims cannot accrue prior to death.

"Where a state statute creates such an independent cause of action, it cannot accrue for FTCA purposes until the date of death, which gives rise to the underlying cause of action. *Philadelphia Geriatric Center*, 463 F.3d at 272 (citing *Fisk v. United States*, 657 F.2d 167, 171 (7th Cir. 1981). Brunson's death was the event which gave rise to Plaintiff's claim for wrongful death, as well as her claims for corporate and vicarious liability. Plaintiff filed an administrative claim on January 15, 2009, less than two years from the date of Brunson's death. Consequently, Plaintiff's claims for wrongful death, corporate liability, and vicarious liability are not barred by the statute of limitations.

C.  **Survival Action & Determining the Start of the Statute of Limitations**

Defendant argues that Plaintiff's survival action on Brunson's behalf is not viable because it is barred by the statute of limitations. Specifically, Defendant argues that Brunson knew, or through the exercise of reasonable diligence, should have known that she had atypical cells which had developed into cancer as early as August 2003, after her first abnormal Pap smear. In response, Plaintiff argues that Defendant incorrectly asserts that Brunson should be imputed with greater knowledge than her physicians, such that she should have determined for herself whether she had cancer. The Court finds Defendant's analysis unpersuasive, and the standard Defendant applies to Brunson unreasonable, as it fails to consider the difficulties of Brunson's situation.

The Pennsylvania discovery rule provides that the statute of limitations begins to run when the complaining party knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). "A plaintiff need not know the exact medical cause of the injury, that his injury is due to another's negligent conduct, or that he has a cause of action." *Id.* at 925. "The polestar of the discovery rule is not the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." *Id.* (citing *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir.

7

1981).

Yet, the discovery rule is not inflexible. "While reasonable diligence is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858 (2005). "Under this test, a party's actions are evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." *Id.* In other words, "whether a damaged party, exercising reasonable diligence, could ascertain that he has been injured and by what cause, is a factual determination," and it must be determined whether the decedent knew, or, more accurately, was capable of knowing of the injury and its cause. *Philadelphia Geriatric Center*, 463 F.3d at 277.

In the present case, upon review of the circumstances confronting Brunson during the relevant time period prior to her death, it is not clear, as Defendant argues, that she did not exercise the required due diligence. According to the Complaint, Brunson followed up with her physicians regularly, however, it was her physicians who did not follow up with additional testing. Given that Brunson was a layperson, relying on the medical expertise and continuing reassurances of her physicians, and that the physicians themselves indicate through Defendant's answer that as late as December 2004, it was not determined whether Brunson indeed had cancer, it is simply unreasonable to impute this degree of knowledge to Brunson.

Moreover, despite Defendant's contentions, it is also unclear what a reasonable date to begin the statute of limitations should be. The Court will not hold Brunson to the standard of knowing as early as December 2004 that any masses were malignant rather than benign when her own physicians had not reached that conclusion. Instead, the Court will look forward to May 18, 2005, when it was unequivocally determined that Brunson in fact had cancer.

However, this does not end the inquiry. The Complaint indicates that sometime between May 18, 2005 and July 1, 2005, Brunson underwent aggressive radiation and concomitant chemotherapy in an effort to cure her cancer. Yet, the record does not provide sufficient facts to describe Brunson's overall condition was during this time, namely whether Brunson had reason to know her condition was caused by Defendant's alleged acts or omissions, or the physical capacity to pursue a negligence action given the circumstances confronting her throughout the relevant time period. Without additional facts, a factual determination of whether Brunson's actions constituted reasonable diligence, or whether she exhibited the qualities of attention, knowledge, intelligence, and judgment necessary to protect her interest, cannot be made. As a result, a determination of whether Plaintiff's survival action on Brunson's behalf is barred by the statute of limitations cannot be made either, since additional facts could establish that given her condition, an appropriate date to begin the statute of limitations would be later than May 18, 2005.

Since it does not appear to a certainty that no relief could be granted under any set of facts that could be proved, Plaintiff is entitled to offer evidence to support the survival claim. As such, judgment on the pleadings with respect to the survival action is not warranted at this early stage. Instead, the Court will grant Plaintiff leave to amend the complaint to plead additional facts, if any, that would be helpful to a factual determination of whether Brunson exercised reasonable diligence, and when, given her condition at the time, the statute of limitations began.